**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLE RICHARD ENTY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-5297** |
| | : | |
| **TANIA BENNETT,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**MCHUGH, J.**                                                       **OCTOBER  4, 2024**

Kyle Richard Enty filed a *pro se* Complaint asserting Title VII and Pennsylvania Human Relations Act employment discrimination claims and constitutional claims against three supervisors of a company from which he was terminated.  Enty seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Mr. Enty *in forma pauperis* status, and dismiss his Complaint on statutory screening.

## I.     FACTUAL ALLEGATIONS[1]

Mr. Enty asserts that he was terminated from his employment at Imperial Security due to an incident in May-June 2024.  (Compl. at 10.)  He appears to allege he was employed as a security guard by the company at a site he identifies only as "Defence."  (*Id*. at 5.)  He claims he was held to a higher standard of performance by Defendants Cameron Shannon and Tania Bennett due to his "light skin and straight hair."  (*Id*.)  The third named Defendant, Lisa

---

[1] The factual allegations set forth in this Memorandum are taken from Enty's Complaint (ECF No. 2).  The Complaint consists of the Court's form available to unrepresented litigants to file employment discrimination claims as well as a four-page letter addressed to the undersigned. The Court deems the entire submission to constitute the Complaint and adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

Spotofor, is identified as the president and corporate executive officer of Imperial Security, and Enty alleges she is liable for the actions of Shannon and Bennett.  (*Id*.)  Enty asserts he was required to "do rounds" while other employees did not have to perform this task.  (*Id*. 5-6.)  He also alleges he was treated differently when he was required to pay for a telephone he broke.  (*Id*. at 6.)

In the letter portion of the Complaint, Enty alleges he was sent home on May 31, 2024 by Bennett for leaving the site unprotected for half an hour when he went to a supermarket.  (*Id*. at 10.)  He asked Bennett if would be working on the upcoming weekend and she told him there was no need for him to go in.  (*Id*.)  Bennett then placed him on a "training schedule which had an anemic pay rate."  (*Id*. at 11.)  He reported to the site on June 8 to find another employee working his shift.  (*Id*.)  He also reported on June 9 and, once at the site, realized that Bennett had texted him not to come in.  (*Id.*)  Enty was told that "the Police at Defence" were "furious" because Enty "was going to the bathroom outside."  (Id.)  Bennett was to have a phone meeting with Defence the following day concerning Enty's actions.  (*Id.*)  When Enty did not hear from Bennett for two days, he called her on October 12 to ask about her meeting with site officials to discuss his actions.  (*Id*.)  He claims that there was no meeting and site officials "didn't know what she was talking about."  (*Id*.)  He got no response from Bennett on the 12th.  He tried again on the 13th, asking Bennett if he was working and she responded "Due to the situation at Defense we're going to have to let you go."  (*Id*. at 12.)  She told Enty she would tell him more later, but did not.  (*Id*.)

Mr. Enty called Defendant Shannon, the regional director of operations at Imperial on Friday, June 14.  (*Id*.)  Shannon told him that Bennett terminated him on May 31.  When he asked about getting paid for the two days thereafter that he appeared at the site to work, Shannon

"responded that I had just shown up uninvited and insisted upon being trained." (*Id*.) When Enty tried to give his side of the story, Shannon talked over him saying in a "bellicose manner" that he "had been told many times never to leave the site unattended." (*Id*.) He claims that other employees have left the site in order to use the bathroom, which is what he had done on the day in question. He concedes he was "away from the site for 45 minutes to an hour," to go to a supermarket to use the bathroom, and that Shannon and the client both knew he was away because the client did not provide bathrooms for guards. (*Id*.) This had also happened at other sites where he worked for Imperial. (*Id*. at 12-13.) After he had his call with Shannon, Enty tried to contact upper management at Imperial including Defendant Spotofor, causing Shannon to call him to ask him why he was doing this. (*Id*. at 13.) He believes that Spotofor "doesn't want to get to the bottom of things and set it right but instead wants this situation to simply go away." (*Id*.) As relief on his claims, Enty seeks reinstatement to his job and back pay.

## II.     STANDARD OF REVIEW

The Court grants Enty leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . .

contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366,

374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115

F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Enty is proceeding *pro se*, the

Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.    **Employment Discrimination Claims**

Federal law prohibits employment discrimination based on race, color, religion, sex,

national origin, age, and disability.[2]  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d

Cir. 2015).  In general, to establish a *prima facie* case of employment discrimination, a plaintiff

must show that: (1) he is a member of a protected class; (2) he was qualified for the position in

question; (3) he suffered an adverse employment action, and; (4) the adverse action occurred

under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789,

797 (3d Cir. 2003).  In particular, a plaintiff must allege sufficient facts to raise a reasonable

expectation that discovery will reveal evidence that his membership in a protected class was

"either a motivating or determinative factor" in her employer's adverse employment action

against her.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Santos*

---

[2] With an exception noted later about who may be held liable, claims under the PHRA are interpreted coextensively with their federal counterparts.  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).  A plaintiff must allege these same elements in order to set forth a plausible claim under the PHRA.  *See Kelly*, 94 F.3d at 105 (noting that Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts").

*v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (explaining that to survive a motion to dismiss a plaintiff "cannot merely state that he was discharged due to his national origin" and instead "must plead facts that plausibly connect his national origin to his discharge").[3]

Title VII makes it unlawful for an "employer" to discriminate.  42 U.S.C. § 2000e-2(a)(1).  Enty, however, seeks to assert claims under Title VII against individuals who are not his employer, namely, Shannon, Bennett, and Spotofor, whom he identifies as supervisory employees of Imperial Security.  An "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  42 U.S.C. § 2000e(b).  The United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, such as Shannon, Bennett, and Spotofor, holding the term "employer" as used in Title VII does not encompass individual employees.  *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996).  Accordingly, the Title VII claims against Shannon, Bennett, and Spotofor must be dismissed.[4]

---

[3] A complaint need not establish a *prima facie case* to survive a motion to dismiss, because a *prima facie case* is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim.  *Connelly*, 809 F.3d 788-89 (internal citations and quotations omitted).  Nonetheless, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

[4] Claims under the PHRA may be brought against defendants other than the plaintiff's employer since the statute also makes it illegal "[f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act . . ." and "[f]or any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. . . . ."  43 Pa. Cons. Stat. § 955(d), (e).  Individuals who are employed by the same employer as the plaintiff may be liable for aiding and abetting violations of the PHRA by the employer pursuant to 43 Pa. Cons. Stat. § 955(e) if they supervise the plaintiff.  *See Dici v. Pennsylvania*, 91 F.3d 542, 552-553 (3d Cir. 1996) (concluding that the plaintiff's supervisor was "a proper defendant under §

B.      **Constitutional Claims**

Enty also asserts constitutional claims under the Fourteenth Amendment against the three

supervisors of Imperial Security.  The vehicle by which federal constitutional claims may be

brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must

allege the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628,

638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability

under § 1983 for those not acting under color of law.").

Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a

state actor — depends on whether there is "such a close nexus between the State and the

challenged action' that seemingly private behavior may be fairly treated as that of the State

itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To

answer that question, [the United States Court of Appeals for the Third Circuit has] outlined

three broad tests generated by Supreme Court jurisprudence to determine whether state action

exists: (1) whether the private entity has exercised powers that are traditionally the exclusive

prerogative of the state; (2) whether the private party has acted with the help of or in concert with

state officials; and (3) whether the state has so far insinuated itself into a position of

---

955(e) and might be liable for aiding and abetting discriminatory practices, as [plaintiff had]
pleaded facts which, if true, could impose liability for violations of the PHRA"); *see also Davis
v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D.
Pa. 1998) (noting that, under the PHRA, "in the appropriate factual scenario, an individual
supervisory employee can be held liable under an aiding and abetting/accomplice liability theory
pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to
prevent further discrimination by an employee under supervision" (citing *Dici*, 951 F. 3d at 552-
53).

interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Mr. Enty's Complaint alleges only action in a private employment context against Shannon, Bennett, and Spotofor. He makes no allegation that they are state actors, nor can his Complaint be understood to allege plausibly that they exercised the power of the state, acted in concert with state officials, or that the state has insinuated itself into Enty's employment with Imperial. His vague allegation that he worked for the private security contractor at a "Defense" site does not plausibly allege state action. *See, e.g.*, *Keisling v. Renn*, No. 09-02181, 2010 WL 3984876, at *11 (M.D. Pa. Sept. 7, 2010), *report and recommendation adopted*, 2010 WL 3984813 (M.D. Pa. Oct. 12, 2010), *aff'd*, 425 F. App'x 106 (3d Cir. 2011) (holding that security contractor and its employees who provided security at the York County Courthouse were not state actors); *see also Gipson v. Supermarkets Gen'l Corp.*, 564 F. Supp. 50, 55 n. 3 (D.N.J.1983) (holding that state licensing requirements for security officers is generally insufficient to place the actions of such individuals under the color of state law (citations omitted).

## IV.    CONCLUSION

For the stated reasons, the Complaint will be dismissed.[5]  The constitutional claims will be dismissed with prejudice since any attempt to amend would prove futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  His Title VII claims will be dismissed as well, but because Enty may be able to allege a plausible employment discrimination claim against his actual employer, he will be permitted leave to file an amended complaint limited to his employment discrimination claim.[6]  Having dismissed all of the federal question claims raised in Enty's Complaint, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  The PHRA claims will therefore be dismissed without

---

[5] Because Enty's Complaint fails to pass statutory screening his motion to appoint counsel will be denied as premature.  In determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law."  *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).  Should this case proceed past screening in the future, Enty may renew his motion.

[6] While granting leave to amend, the Court notes that Enty asserts in his Complaint that he has not received a "right to sue" letter from the EEOC or the equivalent state agency, suggesting that he is not subject to that requirement.  *See* Compl. at 7 (stating "I didn't get [a right to sue letter] because this is Federal Discrimination case").  Discrimination claims under Title VII are subject to several jurisdictional prerequisites including a requirement that the plaintiff exhaust administrative remedies.  The administrative exhaustion requirement for a Title VII claim demands that a plaintiff file charges with the EEOC within 180 days of the alleged discriminatory act.  *Joyner v. School Dist. of Philadelphia*, 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004).  After filing a charge with the EEOC, the plaintiff will receive a "right to sue" letter from that body before filing suit.  *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999) (citations omitted).  The administrative exhaustion requirement "is tempered by a fairly liberal construction given to EEOC charges."  *Id.*  For example, "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure to exhaust the mandatory administrative remedies.  *Id.*  Rather, the touchstone for whether a plaintiff has properly exhausted his administrative remedies is whether "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior E.E.O.C. complaint, or the investigation arising therefrom."  *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).  The Court mentions this requirement so that Enty can efficiently and timely pursue his claim before the EEOC.

prejudice for lack of jurisdiction, so that Enty can raise them in an appropriate state court.[7]  An

order with further information on amendment will be entered separately.


**BY THE COURT:**


s/Gerald Austin McHugh
**UNITED STATES DISTRICT JUDGE**

---

[7] 28 U.S.C. § 1332(a) grants a district court jurisdiction over state law claims in a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).  Enty does not allege the state citizenship of the Defendants.  He provides only a Pennsylvania mailing address for himself, Bennett, and Shannon, and no information about Spotofor.  He has thus not met his burden to show complete diversity of citizenship.